IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

DEL-A-RAE,

    Plaintiff,

v.

EFFINGHAM COUNTY and
EFFINGHAM COUNTY BOARD OF
COMMISSONERS,

    Defendants.

CV 415-259

**ORDER**

Currently before the Court is Defendants' motion for summary judgment. (Doc. 14.) After careful consideration and the benefit of oral argument, the motion is **GRANTED in part and DENIED in part.**

I. <u>Background</u>

This case arises out of Plaintiff's attempt to rezone property in Effingham County. In 2003, Plaintiff Del-A-Rae, Inc. purchased over 700 acres in Effingham County, and Plaintiff sold 118 acres of that tract in 2004. When Plaintiff purchased the property, it was zoned AR-1, which restricted lot sizes to five acres or more. Eventually, Plaintiff sought to rezone its

property because it planned to develop a 350-lot subdivision. This plan included lots as small as a quarter of an acre.

Under Effingham County policy in place at the time of Plaintiff's rezoning request, an application for rezoning first went before the County's zoning board. The zoning board would recommend to the Board of Commissioners ("the Board") whether the application should be granted or denied. In this case, the zoning board recommended granting Plaintiff's application.

Once the zoning board made its recommendation, the application was presented to the Board for a "first reading." According to policy, a first reading was a public hearing on the matter where the Board heard argument in support of and opposition to a proposed rezoning. At the conclusion of the first reading, the Board voted to either approve the rezoning (with or without conditions) or deny the rezoning. This vote, however, was not a final decision on an application. The Board did not issue its final decision until the "second reading," which occurred at the next meeting.

The County implemented this process so that the commissioners and their staff could ensure all intended conditions and stipulations would be a part of a rezoning. This process involved adding conditions that were not referenced in the motion to approve at the first reading. Applicants, though they were aware that a second reading would take place, were not

notified of added conditions and were not afforded a hearing on the new conditions. Rather, at the second reading, the Board would vote on the final versions of rezonings — often through a consent agenda — without discussion from the applicant or the public.

In this case, Plaintiff's application was presented to the Board for a first reading on June 19, 2007. At that meeting, the Board heard from Plaintiff's representatives about the planned development and from members of the public about concerns the development created. At the end of the hearing, one of the commissioners moved to approve the rezoning, subject to a forty-foot buffer for future development. No other conditions were mentioned in the motion, and the Board approved the motion.

Between the first and second readings, the Board and staff members added nine conditions. Notably, these new conditions included a half-acre lot-size restriction and prevented certain road access. At the second reading, which was held on July 17, 2007, the Board approved the rezoning with the new conditions through a consent agenda.

Upon learning about the additional conditions, Plaintiff appealed the decision to the Superior Court of Effingham County. Although the record on the issue is not entirely clear, this proceeding was apparently stayed because Plaintiff filed for

3

bankruptcy.  On March 31, 2015, Plaintiff voluntarily dismissed its state-court complaint, and initiated this lawsuit on September 25, 2015.  Plaintiff's complaint asserts claims under 42 U.S.C. § 1983 and alleges that Defendants' actions violated its procedural-due-process rights, violated its substantive-due-process rights, violated its equal-protection rights, and constituted a taking.  It also asserts a claim for attorneys' fees under 42 U.S.C. § 1988.  Defendants have moved for summary judgment on all claims.  In response, Plaintiff has abandoned its substantive-due-process and takings claims.  It also conceded that Effingham County is the proper Defendant in this case.  Accordingly, the only issues before the Court are whether Plaintiff's procedural-due-process and equal-protection claims against the County survive summary judgment.

## II. Legal Standard

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

4

U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at

608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

In this action, the Clerk of the Court gave Plaintiff notice of the motion for summary judgment and informed it of the

summary-judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Doc. 15.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), are satisfied. The time for filing materials in opposition has expired, and the motion is now ripe for consideration.

### III. Discussion

The County maintains that Plaintiff's claims are barred by the statute of limitations and that they fail on the merits. The Court addresses these arguments separately below.

1. **The County's statute-of-limitations argument fails because Plaintiff's state-court complaint adequately pleaded the claims brought in this case.**

As noted above, Plaintiff originally brought this action in the Superior Court of Effingham County as its appeal from the Board's zoning decision. Plaintiff voluntarily dismissed that action in March 2015. The County contends that Plaintiff's claims are time-barred because they are outside § 1983's two-year statute of limitations. See Rozar v. Mullis, 85 F.3d 556, 560 (11th Cir. 1996) (applying Georgia's two-year personal-injury statute of limitations to a § 1983 claim). Plaintiff contends that this action was properly brought under Georgia's renewal statute, O.C.G.A. § 9-2-61, which provides in relevant part:

7

> (a) When any case has been commenced in either a state or federal court within the applicable statute of limitations and the plaintiff discontinues or dismisses the same, it may be recommenced in a court of this state or in a federal court either within the original applicable period of limitations or within six months after the discontinuance or dismissal, whichever is later, subject to the requirement of payment of costs in the original action as required by subsection (d) of Code Section 9-11-41; provided, however, if the dismissal or discontinuance occurs after the expiration of the applicable period of limitation, this privilege of renewal shall be exercised only once.

O.C.G.A. § 9-2-619(a). Under Georgia law, "[t]o suspend the running of the statute of limitation in a renewal action, the cause of action must be substantially the same as in the original action." Burns v. Dees, 557 S.E.2d 32, 39-40 (Ga. Ct. App. 2001). And under Georgia's pleading standard,[1] it is not "necessary for a complaint to set forth all of the elements of a cause of action in order to survive a motion to dismiss for failure to state a claim." Scott v. Scott, 716 S.E.2d 809, 811 (Ga. Ct. App. 2011). "If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient." Id. (citation omitted) (internal quotation marks omitted).

Plaintiff's state-court complaint included a § 1983 claim and alleged that "Defendants [] deprived Plaintiff of rights guaranteed by the Fifth and Fourteenth Amendments of the United

---

[1] Plaintiff asserts, and the County does not dispute, that Georgia's pleading standard applies to suits that originate in state court and are renewed in federal court.

States Constitution and have diminished the value of Plaintiff's property on a temporary or permanent basis." (Doc. 14-3 ¶ 37.) Although Plaintiff's state-court complaint did not specifically reference procedural due process or equal protection, it did allege a violation of Plaintiff's Fourteenth Amendment rights, and its factual allegations are essentially the same as those pleaded in Plaintiff's federal-court complaint. The Court, therefore, is satisfied that Plaintiff properly renewed this action in this Court, and the County's motion for summary judgment on this issue is **DENIED**.

2. **The County is not entitled to summary judgment on Plaintiff's procedural-due-process claim because the deprivation at issue occurred as a result of an established state procedure.**

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To succeed on a § 1983 procedural-due-process claim, a plaintiff must show (1) a deprivation of a constitutionally protected property interest, (2) state action, and (3) a constitutionally inadequate process. Arrington v. Helms, 438 F.3d 1336, 1347 (11th Cir. 2006). Regarding the third element, "[t]he constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process." Zinermon v.

Burch, 494 U.S. 113, 126 (1990). Here, the only disputed issue is whether Plaintiff was provided the process it was due.[2]

The County argues that Plaintiff was entitled to only postdeprivation process and that state-law remedies adequately provided that process. When a deprivation occurs because of state actors' random and unauthorized actions, postdeprivation, state-law remedies may provide an aggrieved party all the process it is due. See Parratt v. Taylor, 451 U.S. 527, 540-41 (1981). But when state actors act pursuant to an established state procedure, postdeprivation remedies do not provide adequate process. See Zinermon, 494 U.S. at 130; Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982). Further, "where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking." Zinermon, 494 U.S. at 132.

---

[2] For the first time at oral argument, the County argued that Plaintiff did not possess a constitutionally protected property interest in not having the additional conditions added to its rezoning. The Court declines to thoroughly address this argument because the County did not raise it in its initial brief, its reply brief, or its sur-reply brief. See Essex Ins. Co. v. Foley, 827 F. Supp. 2d 1326, 1330 (S.D. Ala. Oct. 31, 2011) ("First, as a procedural matter, this contention is not properly raised because Essex articulated it for the first time in its reply brief."). Briefly, however, the Court notes that the County's argument would fail on the merits. The County argued that, because the Board could have denied Plaintiff's rezoning application, Plaintiff did not possess a property interest in having its property rezoned. That may be true, but the argument misses the mark. Plaintiff is not arguing that the County could not have denied the application. Instead, Plaintiff maintains that it has a right to not have its property rezoned with unknown conditions without an opportunity to be heard on those conditions. Essentially, Plaintiff argues that the County cannot rezone its property without notice and opportunity to be heard.

In Parratt, an inmate brought a § 1983 action against prison officials and claimed they violated his procedural-due-process rights when they negligently lost his mail. 451 U.S. at 529-31. The Supreme Court determined that state law provided the inmate all the process he was due because the prison officials' acts were "random and unauthorized." Id. at 541. In such cases, "it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation." Id. And, the Court noted, "the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur." Id.

In Zinermon, the plaintiff was admitted to a Florida mental-health hospital as a voluntary patient. 494 U.S. at 118. Following his release from the facility, he claimed that he had been incompetent when he signed the form for voluntary admission. Id. at 123-24. He then brought a § 1983 claim and argued that the hospital officials violated his procedural-due-process rights by failing to implement procedural safeguards to prevent incompetent individuals from being admitted as voluntary patients. Id. 124. The Court found that predeprivation process was practicable because it was foreseeable that a mental-health patient could be incompetent and unable to give informed consent. Id. at 136. Moreover, because the officials had been delegated the broad power to admit patients, "the Constitution

11

imposed on them the State's concomitant duty to see that no deprivation occur[red] without adequate procedural protections." Id. at 135. The deprivation, therefore, was "unauthorized only in the sense that it was not an act sanctioned by state law, but, instead, was a depriv[ation] of constitutional rights . . . by an official's abuse of his position." Id. at 138 (citation omitted) (internal quotation marks omitted).

In Messick v. Leavins, 811 F.2d 1439 (11th Cir. 1987), the Eleventh Circuit applied the above principles to the actions of city employees. There, the plaintiffs purchased a barge that was located on city property and began renovating it. Id. at 1440-41. During this time, the city decided that it wanted to clear the land on which the barge sat. Id. at 1441. Eventually, without notifying the plaintiffs, the city burned the barge. Id. The plaintiffs sued and claimed that the city deprived them of their property interest in the barge without due process. Id. City policy dictated that once city employees determined that property was worthless and abandoned, they could destroy the property without any attempt to notify potential owners. Id. at 1442. The court found that the defendants' actions fell within an established state procedure because the employees burned the barge under the authority of the city and predeprivation process was feasible because the defendants could have put written notice on the barge. Id. at 1442-43.

12

Here, the Court is unpersuaded that the County's actions were random and unauthorized, and postdeprivation state-law remedies would not have provided Plaintiff the process it was due. First, at oral argument, the County conceded that its practice did not directly violate state law, so its actions were not unauthorized in that sense. Rather, it implemented this policy as part of its delegated zoning authority. The County, therefore, had a duty to ensure that its policy did not deprive applicants of property interests without due process. See Zinermon, 494 U.S. at 135. Accordingly, this deprivation, which took place under the authority of the County, see Messick, 811 F.2d at 1442, occurred as a result of an established state procedure.

Further, predeprivation process was not impracticable: the Board could have given applicants an opportunity to be heard on additional conditions before the commissioners voted at the second reading. At oral argument, the County argued that it would unduly burden local governments to expect them to hold public hearings whenever they add conditions to rezoning applications. Even assuming this to be true, holding a predeprivation hearing does not become impracticable merely because it is inconvenient; it is impracticable when the deprivation is unforeseeable. See Parratt, 451 U.S. at 541 (discussing that when a deprivation occurs because of random and

unauthorized actions, "the loss is not a result of some established state procedure and the State cannot predict precisely when the loss will occur").

Although the bulk of its argument is focused on the availability of state-law remedies, the County also contends that the first and second readings provided Plaintiff all the process it was due. This argument fails procedurally and on the merits. Procedurally, this argument fails because the County raised it for the first time in its reply brief. See Essex Ins. Co. v. Foley, 827 F. Supp. 2d 1326, 1330 (S.D. Ala. Oct. 31, 2011). And the merits of this argument are disingenuous. The County claims that "the second reading of the zoning amendment provided Del-A-Rae with both notice and the opportunity to be heard which it claims it was not given." (Doc. 26 at 11.) But this statement is undeniably false. Record evidence clearly establishes that rezoning applicants — including Plaintiff — were not given the opportunity to be heard at the second reading. Accordingly, the Court rejects this argument.

Because there is sufficient evidence that the County deprived Plaintiff of a property interest without due process, the County's motion on this issue is **DENIED**.

14

## 3. Plaintiff's equal-protection claim fails because it has not presented sufficient comparator evidence.

Plaintiff asserts a class-of-one equal-protection claim. The County argues that this claim fails because there is not sufficient evidence that it treated similarly situated property differently. The Court agrees with the County. A class-of-one claim, which was first specifically recognized in Village of Willowbrook v. Olech, 528 U.S. 562 (2000), requires a plaintiff to prove that it "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id. at 564. To be considered similarly situated, the proposed comparator "must be *prima facie* identical in all relevant respects." Campbell v. Rainbow City, 434 F.3d 1306, 1314 (11th Cir. 2006). To meet this standard, a comparator development generally must be "the same size, have an equivalent impact on the community, and require the same zoning variances." Griffin Indus. v. Irvin, 496 F.3d 1189, 1204 (11th Cir. 2007).

Here, as comparator evidence, Plaintiff points to another proposed development known as The Hedges. The Hedges, which was never completed, was intended to be developed on the 118 acres of the original tract that Plaintiff sold and would have included 104 lots. According to Plaintiff, The Hedges meets the comparator standard because it was a planned residential

15

development that was not subject to a half-acre lot-size requirement.

The Court is unpersuaded for two reasons. First, with respect to the lot-size requirement, the Board approved a site plan for The Hedges that did not include lot sizes smaller than half an acre. The County maintains, and Plaintiff does not dispute, that the approval of the site plan was binding on the developers. So The Hedges could not have contained lot sizes smaller than half an acre. Moreover, because Plaintiff's planned development was designed to contain roughly three times as many homes as The Hedges, the two projects would not have been essentially the same size and would not have had an equivalent impact on the community. See Griffin Indus., 496 F.3d at 1204. Accordingly, the Court **GRANTS** the County's motion on this issue.

4. **The County is not entitled to summary judgment on Plaintiff's claim for attorneys' fees because Plaintiff's procedural-due-process claim survives summary judgment.**

The County argues that Plaintiff's claim for attorneys' fees under 42 U.S.C. § 1988 fails because Plaintiff is not a prevailing party. But, as noted above, Plaintiff has presented sufficient evidence for its procedural-due-process claim to survive summary judgment. Accordingly, the County's motion on this issue is **DENIED**.

### IV. Conclusion

First, as noted above, Plaintiff has abandoned its substantive-due-process claim and its takings claim. The Court, therefore, **GRANTS** summary judgment on these claims. Second, because Plaintiff has abandoned its claims against the Effingham County Board of Commissioners, this Defendant is **DISMISSED** from this action. Finally, the Court **GRANTS** the County's motion with respect to Plaintiff's equal-protection claim, and it **DENIES** the County's motion with respect to Plaintiff's procedural-due-process claim and its claim for attorneys' fees. Plaintiff's procedural-due-process claim will proceed to trial.

**ORDER ENTERED** at Augusta, Georgia this 21ST day of September, 2016.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA